### WILLIAM PHILBRICK v. STATE OF NEBRASKA.

#### FILED SEPTEMBER 27, 1920. No. 21330.

1. **Indictment and Information:** SUFFICIENCY. "Where a statute states the elements of a crime, it is generally sufficient, in an information or indictment, to describe such crime in the language of the statute. *Cordson v. State*, 77 Neb. 416." *Goff v. State*, 89 Neb. 287.

2. **Criminal Law:** TEST OF RESPONSIBILITY. "The generally accepted test of responsibility for crime is the capacity to understand the nature of the act alleged to be criminal, and the ability to distinguish between right and wrong with respect to such act." *Schwartz v. State*, 65 Neb. 196.

3. ————: INSANITY: QUESTION FOR JURY. The defense of insanity, when interposed by the accused in a criminal action, is a question of fact for the jury.

4. ————: VERDICT: EVIDENCE. When the defendant in a criminal action pleads insanity as a defense and the jury is properly instructed on that question, the verdict will not be disturbed, unless it is clear that it is not supported by the evidence.

ERROR to the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*A. H. Murdock,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *J. B. Barnes, contra.*

DEAN, J.

William Philbrick was convicted in Douglas county of feloniously assaulting his wife with intent to commit murder. He was sentenced to the penitentiary for an indeterminate period of not less than 2 nor more than 15 years, and has brought the case here on error for review.

The evidence tends to prove that Philbrick and his wife frequently engaged in domestic broils; that some of their trouble grew out of the care of their three children, aged

from five to nine years; that owing to a strike defendant, a boilermaker by trade, was unemployed for a month or more before his arrest, except for odd jobs, driving an ice wagon and the like; that to assist in obtaining necessaries for the family Mrs. Philbrick obtained employment as an elevator conductress in an Omaha building, and was so employed when the assault was made; that because her daily employment caused her to be absent a part of the day from her home defendant therefore insisted that the children should be placed in a crèche; that she opposed this plan and favored keeping them in their own home on the ground that defendant, being practically unemployed, could assist in looking after them until the strike ended.  Mrs. Philbrick testified that defendant was abusive in his language and conduct, and that her father and brothers on several occasions, recently before the assault, were obliged to interfere to protect her from physical violence at his hands; that she finally yielded and placed the children in the crèche; that two days before the assault she was "chased out of the house" by defendant; that she then went to live with a relative; that the next morning, that being the day before the assault, Philbrick came to the First National Bank building where she was employed and attempted to get her to return home; that she was afraid of him and refused and so informed him; that on the following morning he again came to the building to see her; that in the afternoon about 4:30 o'clock he came again and entered the elevator and rode to the top floor; that when the passengers had all departed and they were alone in the elevator defendant made as though to give her some trifling article that he held in his hand; that when she reached out her hand to take it he suddenly and without warning drew an ice pick that was concealed about his person and stabbed her through both of her arms and in the right lung, "the full length of the ice pick," three times and in her abdomen several times;

that she then sank to the floor of the elevator, and short-
ly afterwards was removed to a hospital where, on ac-
count of her wounds, she was detained "from Tuesday
until Saturday;" that thereafter she was at her room
for a week and was in bed several days. A physician
who attended Mrs. Philbrick immediately after the as-
sault testified that "she was suffering from some punc-
tured wounds of the body.   *   *   *   She had some in the
arm, some in the abdomen, some on the chest." On the
cross-examination of Mrs. Philbrick it developed that
the trouble between them became such that, a few weeks
before defendant's arrest, she caused to be prepared and
was about to file a petition for a divorce.

Defendant argues that "the information does not state
a crime against the defendant," and that the court there-
fore erred in overruling his objection to the introduction
of any evidence; that the court erred in admitting evi-
dence tending to prove that "defendant was in posses-
sion of an ice pick at the time the assault was committed."

Section 8589, Rev. St. 1913, provides: "Whoever as-
saults another with intent to commit a murder, rape
or robbery upon the person so assaulted, shall be im-
prisoned in the penitentiary not more than fifteen nor
less than two years." The charging part of the infor-
mation recites that, on or about June 24, 1919, William
A. Philbrick, in Douglas county, Nebraska, "then and
there being, then and there in and upon one Mary A.
Philbrick,   *   *   *   unlawfully, maliciously and feloni-
ously did make an assault, with the intent of him, the
said William A. Philbrick, then and there and thereby
her, the said Mary A. Philbrick, then and there to kill
and murder;" contrary to the form, etc. Abel V. Shot-
well, County Attorney.

"No indictment shall be deemed invalid, nor shall the
trial, judgment or other proceedings be stayed, arrested
or in any manner affected: First. By the ommission
of the words 'with force and arms,' or any word of simi-

Philbrick v. State.

lar import;   *   *   *   nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Rev. St. 1913, sec. 9050.

The court did not err in its ruling. The modern tendency is to disregard technical objections that do not tend to prejudice the substantial rights of the accused. When the intent is charged and the information is in the language of the statute, the means by which the offense is committed are matters of evidence for submission to the jury. In all criminal prosecutions the accused must be apprised of the nature and cause of accusation preferred against him, that he may prepare his defense and plead the judgment as a bar to future jeopardy for the same offense. The information before us plainly charges a felonious assault in the language of the statute, and this has been held sufficient by this and other courts. *Goff v. State,* 89 Neb. 287.

*Rice v. People,* 15 Mich. 1, involves the same question in part. The prosecution in that case was brought under 2 Comp. Laws Mich. sec. 5724, which reads: "If any person shall assault another with intent to commit the crime of murder, every such offender shall be punished by imprisonment in the state prison for life, or any number of years." The charging part of the information in the *Rice* case avers that the defendant, "with force and arms in and upon one Charles Parsons, then and there being, did make an assault, and him, the said Charles Parsons, then and there did beat, wound and bruise, with intent, him, the said Charles Parsons, then and there, to kill and murder, and other injuries to him, the said Charles Parsons, then and there did, contrary to the statute," etc. Judge Cooley wrote the opinion of the court and among other things said: "The information charges the defendant with an assault with intent to murder.   *   *   *   No further words are necessary to inform the accused of the nature of the charge

against him; and if more are essential for any purpose, it can only be for technical reasons. * * * The offense as described in the statute is, an assault 'with intent to commit the crime of murder;' and this is the offense as set out in the information."

The rule was announced in *United States v. Herbert,* 26 Fed. Cas. 284: "In an indictment under the statute for assault and battery with intent to kill, it is not necessary to state the manner and extent of the assault and battery, nor the particular weapon used. It is only necessary to describe the assault and battery as at common law, with the addition of the words charging the intent to kill in the terms required by the statute. It is not necessary to charge the assault to be felonious nor malicious, nor to be with malice prepense, nor to state any other circumstance to show that, if death had ensued, it would have been murder." In *State v. Jackson,* 37 La. 467, the court said: "In an indictment for an assault with intent to murder, it is not necessary to set forth the mode of assault, or the means or weapon with which the assault was made." To the same effect is *State v. Gainus,* 86 N. Car. 632: "In an indictment for an assault with intent to murder, it is not necessary to state the instrument used by the assailant." In the long ago a jurist with foresight observed: "More offenders escape by the over easy ear given to exceptions in indictments than by their own innocence, and many times gross murders, burglaries, robberies, and other heinous and crying offenses, escape by these unseemly niceties to the reproach of the law, to the shame of the government, and to the encourgement of villany, and to the dishonor of God." 2 Hale's Pleas of The Crown (Eng.) 193.

Not only is there a strong tendency in the courts to relax the requirement of extreme technical accuracies that do not go to the merits, as pointed out in *Blazka v. State, ante,* p. 13, but distinguished statesmen as well

Philbrick v. State.

have given to this subject earnest attention. As bearing on this question President Taft said in his message to congress in December, 1910: ''The necessity for the reform exists both in United States courts and in all state courts. * * * The simplicity and expedition of procedure in the English courts. today make a model for the reform of other systems. * * * I cannot conceive any higher duty that the supreme court could per-. form than in leading the way to a simplification of procedure.'' 6 Am. Bar. Ass'n Jour. 519 (July, 1920). Woodrow Wilson when governor, in an address before the Kentucky Bar Association in 1911, among other things said: ''America lags far behind other countries in the essential matter of putting the whole emphasis in our courts upon the substance of right and justice. * * * The actual miscarriages of justice, because of nothing more than a mere slip in a phrase or a mere error in an immaterial form, are nothing less than shocking. Their number is incalculable, but much more incalculable than their number is the damage they do to the reputation of the profession and to the majesty and integrity of the law.'' 6 Am. Bar Ass'n Jour. 520.

The defense of insanity was interposed, and counsel argues that the court erred in its instructions on that question. We do not think so. The court in brief informed the jury ''that the beneficence of the law will not permit the punishment of one who is not responsible for his acts by reason of mental disease,'' because a person so afflicted ''is not capable of forming an intent'' to commit crime, and hence is not subject to punishment. And that: ''In order to hold the defendant criminally responsible'' for the offense with which he is charged, ''it is only necessary that the jury be satisfied from all the evidence, beyond a reasonable doubt, that he had sufficient mental capacity to distinguish between right and wrong as to the particular act with which he so stands charged.'' In *Schwartz v. State*, 65

Neb. 196, we said: "The generally accepted test of responsibility for crime is the capacity to understand the nature of the act alleged to be criminal, and the ability to distinguish between right and wrong with respect to such act." The question of defendant's sanity, like other questions of fact, comes within the province of the jury, and, having been determined by that body, under instructions that correctly state the law, we will not substitute our judgment for that of the jury, unless from the evidence it appears to be clearly wrong.

Defendant argues: "The party assaulted did not die; hence the blows were not sufficient to produce death so that the court could not properly charge as it did in this fourth paragraph (of instruction No. 6) that the jury must find, if the ice pick was used at all, it was used with an intent to murder." On the question of intent the court charged the jury: "If you find from the evidence beyond a reasonable doubt that the defendant, while sane, intentionally assaulted his wife with a deadly weapon, in such manner and at such places upon her body as would have a natural and probable tendency to cause her death, then the presumption would be that defendant intended the natural and probable consequences of his acts." We approve the instruction as used. In a criminal case intent is a question of fact for the jury to be determined from all the evidence and the circumstances of the case. In *Jerome v. State,* 61 Neb. 459, we said: "On the trial of a criminal case every hypothesis that implies the defendant's guilt is pertinent, and any evidence fairly tending to sustain such hypothesis is relevant to the issue."

Dr. Young is county physician and official examiner for the board of insanity. In respect of defendant's mental condition he testified, *inter alia,* on the part of defendant: "Taking into consideration all the data you have given me in the hypothetical question and the fact that the man apparently recovered his full senses three

or four days afterwards, on just this data alone, I don't think I would be able to give you a definite opinion as to whether he was sane or insane; I could only say that there is a strong possibility of his being insane.   *   *   * As to the man's insanity or sanity, I would not be able to give a definite answer." In view of the foregoing testimony and in the present state of the record and of the law applicable thereto, error cannot be predicated on the rejection of defendant's offer of proof, namely: "This defendant now offers to prove by the witness on the stand that taking into consideration the hypothetical question heretofore given to the witness, the defendant was in such a frame of mind on the evening of June 24, 1919, while he was in the elevator, that he was unable to know or distinguish the difference between right and wrong."

Other alleged assignments of error are pointed out which, upon examination, we do not find it necessary to discuss. We conclude that the evidence supports the verdict upon every contested question of fact. The case was fairly submitted, and we do not find reversible error.

The judgment is

AFFIRMED.

ALDRICH and FLANSBURG, JJ., not sitting.