STATE OF NEBRASKA, APPELLEE, V. GARY L. CADWALLADER, APPELLANT.

434 N.W.2d 506

Filed January 13, 1989.    No. 87-990.

Bruce Dalluge, of Morrissey, Morrissey & Dalluge, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

In separate informations, the defendant, Gary L. Cadwallader, was charged with two counts of felony motor vehicle homicide, and with operating a motor vehicle while under the influence of alcoholic liquor, third offense. Another count, charging operating a motor vehicle while his operator's license had been revoked, was dismissed pursuant to a plea bargain.

Upon pleas of no contest, the defendant was sentenced to 5 years' imprisonment on each of the motor vehicle homicide counts, and to 6 months' imprisonment, a fine of $500, and revocation of his operator's license for 15 years on the charge of operating a motor vehicle while under the influence of alcoholic liquor, third offense. All sentences run consecutively and are to be served in a facility of the Department of Correctional Services. Since all three sentences were the maximum permitted by statute, the defendant is entitled to credit for 149 days of

presentence incarceration.

The defendant has appealed. His assignments of error, all of which relate to the sentences imposed on the defendant, may be summarized as follows: (1) The sentences constitute double jeopardy; (2) it was error for the trial court to consider victim impact statements and similar materials; (3) it was error for the trial court to consider the effect of parole and good time upon any sentence imposed; and (4) the sentences are excessive.

The charges are the result of an automobile accident that occurred near Table Rock, Nebraska, on May 5, 1987. The defendant was driving west on Highway 4 with David Huffman as a passenger in his vehicle. Tamberlyn LaVigne was driving east on the same highway. At a point approximately 2.7 miles east of Table Rock, the defendant's vehicle left the roadway twice and then crossed the centerline of the highway and collided with the LaVigne automobile in the eastbound traffic lane. Both Huffman and LaVigne died as a result of injuries sustained in the accident. Several witnesses who talked with the defendant just before the accident recognized that the defendant was intoxicated. A blood alcohol test made just after the accident showed the defendant's blood contained .178 percent alcohol.

The first assignment of error is based upon our decision in *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987). In the *Hoffman* case, the defendant, after a bench trial, was convicted of second degree assault, motor vehicle homicide, and drunk driving.

Neb. Rev. Stat. § 28-306 (Reissue 1985), the Nebraska motor vehicle homicide statute, provides:

(1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.

(2) Except as provided in subsection (3) of this section, motor vehicle homicide is a Class I misdemeanor.

(3) If the proximate cause of the death of another is the operation of a motor vehicle in violation of section 39-669.01, 39-669.03, or 39-669.07, motor vehicle

homicide is a Class IV felony.

Motor vehicle homicide can be committed in a number of different ways because the operation of the motor vehicle need only be in violation of any state law or city or village ordinance. In the *Hoffman* case, one of the violations proved was operating a motor vehicle while under the influence of alcoholic liquor. Since that was a violation on which the conviction on the motor vehicle homicide count rested, and separate consecutive sentences were imposed on each count, the State could not punish the defendant separately for driving while under the influence of alcoholic liquor. As stated in the *Hoffman* case at 146-47, 416 N.W.2d at 241:

> In finding Hoffman guilty of motor vehicle homicide (count II), the district court found Hoffman guilty of drunk driving in violation of § 39-669.07, and also found Hoffman guilty of the separate charge of drunk driving alleged in count III. There is no question that the drunk driving, as a violation of a Nebraska statute necessary for the crime of motor vehicle homicide charged in count II, was the identical prohibited act and the exact offense charged in count III. Consequently, count II and count III involved the same act—drunk driving. . . . The constitutional protection against double jeopardy, therefore, applies to Hoffman's convictions on counts II and III. In Hoffman's case, the district court imposed consecutive sentences for all the convictions. The consecutive sentences imposed on Hoffman for motor vehicle homicide and drunk driving are cumulative sentences for the same offense and constitute separate and multiple punishments for the same offense, a denial of the protection against double jeopardy afforded by the Constitutions, both state and federal. See *Brown v. Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

The information filed in this case alleged felony motor vehicle homicides by operating a motor vehicle "in violation of Sections 39-669.01, 39-669.03, or 39-669.07." Neb. Rev. Stat. § 39-669.01 (Reissue 1988) is the reckless driving statute; Neb. Rev. Stat. § 39-669.03 (Reissue 1988) is the willful reckless driving statute; and Neb. Rev. Stat. § 39-669.07 (Reissue 1988)

is the driving under the influence of alcoholic liquor statute. Unlike the *Hoffman* case, there was no finding by the trial court in this case that the motor vehicle homicides were the result of the defendant's operation of a motor vehicle while under the influence of intoxicating liquor. The fact that the information in this case alleged the offenses in the alternative and there was no finding by the trial court as to which violation was the basis for the findings of guilty distinguishes this case from the *Hoffman* case and prevents a finding of double jeopardy because of cumulative sentences for the same offense.

The second assignment of error relates to victim impact statements and similar materials which were included in the presentence report and were considered at the sentencing hearing. The defendant contends that it was improper for the court to consider these matters and that Neb. Rev. Stat. § 29-2261 (Reissue 1985), which provides that a presentence report should include written statements submitted to the county attorney or probation officer by a victim, should be declared unconstitutional.

*Booth v. Maryland,* 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), cited by the defendant, involved the admission into evidence of a victim impact statement in a capital case in which the defendant had elected to have his sentence determined by the jury. The majority of the Court held the statement was irrelevant and inadmissible in a capital sentencing case but recognized that "the full range of foreseeable consequences of a defendant's actions may be relevant in other criminal and civil contexts." 107 S. Ct. at 2533. In a footnote to the opinion, the Court stated:

> Our disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. Similar types of information may well be admissible because they relate directly to the circumstances of the crime. Facts about the victim and family also may be relevant in a noncapital criminal trial. Moreover, there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant. . . .

107 S. Ct. at 2535 n.10.

In *State v. Carlson*, 225 Neb. 490, 491, 406 N.W.2d 139, 140 (1987), we said:

> The sentencing judge appeared to rely heavily upon the demands of the victims in this case that the punishment be severe. . . . A judge should take into account facts obtained from such source in imposing sentence, as he or she should consider all facts pertinent to sentencing, but a judge must not and cannot allow the judgments and conclusions of the victim to be substituted for those of the court in imposing sentence. To do so constitutes an abuse of discretion.

At the sentencing hearing in the instant case, the trial court stated on the record that it was not relying on victim impact statements and similar materials in determining what sentences should be imposed on the defendant. Before imposing the sentences the trial court stated:

> And for the record right now, I want to state that even though, and it becomes important that I say this, it's not that I wouldn't like to use your letters and that I don't have a tremendous amount of sympathy for the family and the friends of the victim, but the law does not allow me to look at who the victim is to determine what sentence should be pronounced. So even though I want to go on record stating that — and I want the letters to become a part of the record, I have to go on record and say that I did not consider what type of person either of the deceased were [sic] in deciding what my sentence is.

The record in this case shows that the sentences imposed on the defendant were based upon his blameworthiness, his character, and the circumstances of the crime, and not upon the character of the victims. There was no prejudicial error in placing the victim impact statements and similar materials in the presentence report.

The third assignment of error is that it was error for the trial court to consider the effect of parole and good time upon any sentence imposed. The defendant argues that the trial court was trying to compensate for the effects of parole and good time when the defendant was sentenced to a maximum possible term

of imprisonment for 10 years 6 months on the three counts.

During the sentencing hearing the trial court remarked,

> According to my chart, a ten year sentence, his earliest possible release date, taking into consideration the total maximum good time, meritorious good time, and good time behavior is five years and five months. So if he jammed out with no problems at all, it'd be five years and five months on a ten year sentence. And it's my understanding now the policy is if it's — after they've served a third of their sentence, they're eligible for parole.

In fixing the term of imprisonment, a trial court has a number of matters to consider. The sentence should be such as to provide some deterrence; of sufficient length to at least afford a possibility of rehabilitation; of sufficient severity so as not to depreciate the seriousness of the crime; and, in a proper case, such as to provide some measure of protection to society by removing the offender temporarily from society. It would be strange to think that a sentencing judge could make a decision as to a proper term of imprisonment if no consideration were given to the various factors that determine how much of a particular sentence must be served before the prisoner can be released.

It is important to recognize that a sentencing court cannot control the operation or application of good time and parole statutes, because they are administered by the executive branch of government. As we stated in *State v. Houston*, 196 Neb. 724, 727, 246 N.W.2d 63, 65 (1976):

> The defendant's argument apparently is that the possible effect of the good time law is an irrelevant matter for consideration by the court in determining the sentence it will impose. Perhaps it is, but the mere fact the court stated that it took the effects of the statute into consideration does not, in our judgment, constitute a due process violation. First of all, whatever the court does in imposing sentence cannot affect the actual application of the statute, or other statutes which affect time served, for those statutes are administered by agents of the executive branch of government pursuant to statutes enacted by the legislative branch. Anything a sentencing court may say

cannot prevent their application.
Further, "[t]he time served usually depends upon the defendant himself and those who are by law charged with carrying out the constitutional and legislative mandates." *Id*. We find no merit in this assignment of error.

The final assignment of error is that the sentences which were imposed are excessive. In this regard it is important to note that although the trial court fixed the sentences at the maximum term permitted by statute, the trial court did not specify a minimum term. Since there is no statutory minimum term for felony motor vehicle homicide, the defendant will be eligible for parole on the date he begins serving those sentences. See, Neb. Rev. Stat. §§ 28-105 (Reissue 1985), 83-170(5) (Reissue 1987), and 83-1,110 (Reissue 1987).

The defendant was 37 years old at the time of the offenses. The previous convictions relied on to prove operating a motor vehicle under the influence of alcoholic liquor, third offense, were on January 16, 1985, which was for a third offense, and March 18, 1985, which was charged as a second offense.

On the day of the accident, the defendant had been drinking throughout the day. Shortly before the accident happened, the defendant stopped to ask directions. The person who spoke with the defendant told the defendant, who was obviously intoxicated, "You need to park that car and sleep it off." The defendant disregarded this advice and continued to drive until the accident happened and the two victims were killed.

The defendant's prior criminal record shows numerous traffic offenses, with probation granted on at least four occasions. It is obvious that the defendant failed to benefit from these prior probations.

The defendant's many convictions resulted in numerous suspensions of his operator's license. The May 20, 1984, offense in Hall County, which originally resulted in probation and apparently resulted in the dismissal of a later charge on June 30, 1984, eventually resulted in a 15-year suspension when his probation was revoked on November 25, 1986. The defendant, however, disregarded the suspension and was arrested twice in Holt County in 1986 for driving under suspension. In view of the defendant's attitude and disregard for the law, it was just a

matter of time until he would be involved in a serious accident. That happened on May 5, 1987, when he killed the two victims in this case.

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Clark*, 228 Neb. 599, 423 N.W.2d 471 (1988). The record in this case shows no abuse of discretion.

The judgment is affirmed.

AFFIRMED.