STATE OF NEBRASKA, APPELLEE, V. RODNEY E. VICE, APPELLANT.
519 N.W.2d 564

Filed June 28, 1994.    No. A-93-033.

Steven R. Brott for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

SIEVERS, Chief Judge, and CONNOLLY and IRWIN, Judges.

CONNOLLY, Judge.

Rodney E. Vice appeals his conviction for making terroristic threats and the determination that he was a habitual criminal on grounds that the prosecution for terroristic threats subjected him to double jeopardy. Vice previously had been convicted of

violating a protection order. That conviction was based on the same incident from which the prosecution for terroristic threats arose. We affirm the judgment of the trial court because we cannot determine from the record whether the offense for which Vice was convicted in the terroristic threats proceeding consisted of the same elements as the conduct underlying his conviction for violating the protection order.

## I. FACTS

Prior to the underlying incident in this case, Vice's grandmother, Daisy Williams, had obtained a protection order against Vice which prohibited him from the following: "(1) Imposing any restraint upon the personal liberty of [Williams]; . . . (2) Threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of [Williams]; . . . (4) Entering upon the premises . . . occupied by [Williams] as her . . . residence." See Neb. Rev. Stat. § 42-924 (Cum. Supp. 1990). After having dinner with Williams at her home one evening and then departing, Vice returned to Williams' home the same evening and was, according to Williams, "doped." Williams informed Vice that he and a friend were no longer allowed in her garden because she believed that they were cultivating marijuana there. Vice indicated that he would defy Williams' prohibition. Williams responded by announcing that she was going to "call the law." Vice forced Williams down onto a couch. Williams got up and tried to leave the room, but Vice forced her down into a chair. According to Williams, Vice said to her, " 'I've just a notion to throw you down the steps.' " He pinned Williams' arms to her sides and carried her to another part of the home, where there were steps leading down to the basement. Williams believed that Vice was going to throw her down the steps. She said Vice set her down and left after she said to him, " 'Rodney, you can kill my body, but you can't kill my soul.' "

Williams reported the incident to authorities, Vice was arrested pursuant to a warrant, and criminal charges were filed. Although the filing is not preserved in the record on appeal, the record indicates that Vice was charged with criminal contempt for violating the protection order. In a separate information,

Vice was charged with making terroristic threats and with being a habitual criminal. See Neb. Rev. Stat. §§ 28-311.01 and 29-2221 (Reissue 1989).

On November 20, 1991, the criminal contempt charge was tried to the county court, and Vice was found "guilty as charged." The court announced that Vice would receive the maximum sentence. Vice was sentenced to a 6-month jail term.

Because the protection order incorporated language from § 42-924 and because the maximum sentence under § 42-924 is 6 months, we presume that Vice was charged with violating § 42-924 rather than Neb. Rev. Stat. § 25-2121 (Reissue 1989). Our analysis is the same regardless of which statute was relied upon in the prosecution for violating the protection order.

At his arraignment on February 27, 1992, in district court on the charges of making terroristic threats and being a habitual criminal, Vice moved for dismissal on grounds that he had not been timely arraigned. The motion was taken under advisement, and a jury trial was set for March 27. On March 19, Vice filed a motion to quash on grounds that he was being subjected to double jeopardy because the conduct for which he had been convicted of violating the protection order consisted of the same elements as the conduct alleged in the terroristic threats charge. Both pretrial motions were overruled, and the matter proceeded to trial. Vice was found guilty of making terroristic threats. The court determined that Vice was a habitual criminal and sentenced him to a prison term of 15 years.

## II. ASSIGNMENTS OF ERROR

Vice argues that the court erred in denying the motion to dismiss on grounds that he was not timely brought before a magistrate for a probable cause hearing on his arrest, in denying the motion to quash on grounds of double jeopardy, and in finding that Vice was a habitual criminal.

## III. STANDARD OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992).

## IV. ANALYSIS

### 1. TIMELY ARRAIGNMENT

 The requirement that a defendant be arraigned within 48 hours of arrest applies only in the case of a warrantless arrest. See *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). Vice was arrested pursuant to a warrant. This assignment of error is without merit.

### 2. DOUBLE JEOPARDY

In *U.S. v. Dixon*, _____ U.S. _____, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), a majority of the Court agreed that the protection of the Double Jeopardy Clause attaches to nonsummary criminal contempt prosecutions. Also in *Dixon*, a majority of the Court overruled *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990). In *Grady*, the Court held that the Double Jeopardy Clause bars prosecution for a crime based on the same conduct for which a defendant already has been convicted, even if there are factual elements that distinguish the subsequently prosecuted offense from the offense on which the prior conviction was based. In *Dixon*, the Court reinstated the test for double jeopardy established in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under the *Blockburger* same-elements test, a defendant can be prosecuted for multiple offenses based on the same conduct if each offense requires proof of a factual element which does not have to be proven in another offense.

In *Dixon*, two defendants were convicted of criminal contempt, one for violating an order of conditional release and one for violating a civil protection order, and then were prosecuted for criminal offenses based on the same conduct for which they had been convicted of criminal contempt. The defendants' criminal contempt convictions were based on violations of criminal statutes that had been incorporated into the court orders. The Court did not reach a consensus on how to apply the *Blockburger* test when comparing the elements of a criminal contempt violation to the elements of a subsequently prosecuted statutory criminal charge. Of the five-justice majority that overruled *Grady*, Justice Scalia, joined by Justice Kennedy, stated that for purposes of applying the *Blockburger*

test in *Dixon*, the Court must compare the statutory elements of the offenses underlying the criminal contempt convictions with the statutory elements of the subsequently prosecuted criminal charges brought against the defendants. Writing on behalf of himself and Justices O'Connor and Thomas, Chief Justice Rehnquist rejected the idea that *Blockburger* requires any substantive analysis of the elements of the conduct underlying a criminal contempt conviction. The Chief Justice stated that there are only two elements in any criminal contempt conviction: (1) knowledge of the defendant that the court order existed and (2) willful violation of the order. Thus, argued the Chief Justice, *Blockburger* requires a comparison between the universal, generic elements of a criminal contempt conviction and the elements of a subsequently prosecuted criminal charge.

The case at bar involves a scenario different from *Dixon*. Although the proscriptions of the protection order against Vice were dictated by § 42-924, no statutory crimes from Nebraska's criminal code were incorporated into the protection order. Vice's criminal contempt conviction was based not on an underlying violation of the Nebraska Criminal Code, but on a violation of one or more of the proscriptions of the protection order. In *Dixon*, Justice Scalia opined that to apply the *Blockburger* test in a scenario such as the one before us, the terms of the court order must be analyzed the same as elements in a criminal statute because the terms of the order define the prohibited conduct for which the defendant was convicted of criminal contempt. This of course conflicts with the Chief Justice's position that a court applying the *Blockburger* test where the prior conviction is for criminal contempt does not consider the substantive conduct underlying the criminal contempt conviction.

The failure of the Court to establish a majority position on how to apply the *Blockburger* test when comparing the substantive elements of a court order to the substantive elements of a criminal statute does not concern us because, in the instant case, the result is the same under either the Scalia or Rehnquist approach. If we accept the premise that the only two elements of a criminal contempt conviction are knowledge of the order by the defendant and willful violation, then, on its

face, Vice's conviction for criminal contempt is distinguishable from the subsequently prosecuted charge of terroristic threats, and there is no double jeopardy violation. If instead we adopt the view that *Blockburger* requires us to analyze the substantive elements of the conduct underlying Vice's criminal contempt conviction, there is not sufficient evidence in the record to allow us to find a double jeopardy violation.

Vice directs our attention to the second proscription of the protection order, which prohibited him from threatening, assaulting, molesting, or attacking Williams, or otherwise disturbing her peace. Without providing the element by element analysis required under *Blockburger*, Vice asserts that in the terroristic threats proceeding he was prosecuted for an offense whose factual elements were indistinguishable from the conduct underlying his conviction for violating the protection order.

In *State v. Cadwallader*, 230 Neb. 881, 434 N.W.2d 506 (1989), an automobile accident resulted in the defendant being charged with two counts of felony motor vehicle homicide and one count of driving while under the influence of alcohol. The defendant argued that his conviction of and sentence for driving while under the influence of alcohol constituted a double jeopardy violation. The court stated:

> The information filed in this case alleged felony motor vehicle homicides by operating a motor vehicle "in violation of Sections 39-669.01, 39-669.03, or 39-669.07." Neb. Rev. Stat. § 39-669.01 (Reissue 1988) is the reckless driving statute; Neb. Rev. Stat. § 39-669.03 (Reissue 1988) is the willful reckless driving statute; and Neb. Rev. Stat. § 39-669.07 (Reissue 1988) is the driving [while] under the influence of alcoholic liquor statute. . . . [T]here was no finding by the trial court in this case that the motor vehicle homicides were the result of the defendant's operation of a motor vehicle while under the influence of intoxicating liquor. The fact that the information in this case alleged the offenses in the alternative and there was no finding by the trial court as to which violation was the basis for the findings of guilty . . . prevents a finding of double

jeopardy because of cumulative sentences for the same offense.

230 Neb. at 884-85, 434 N.W.2d at 509.

The same rationale applies in Vice's case. The trial court found Vice "guilty as charged" of violating the protection order, but we cannot determine from the record which specific proscription of the protection order Vice was found to have violated. Vice's conviction for violating the protection order could have been based on any of three proscriptions in the order, two of which, for purposes of *Blockburger* double jeopardy analysis, are not equivalent to the crime of terroristic threats. Without engaging in an element by element examination of the prohibited conduct in each proscription of the protection order, we note that a prosecution of Vice for violating the protection order that was based on the proscription prohibiting Vice from restraining Williams' liberty, or on the proscription prohibiting Vice from entering Williams' residence, would have required proof of factual elements that do not have to be proven in a prosecution for terroristic threats. Furthermore, to secure a conviction for the crime of terroristic threats, the State must prove that a defendant threatened to commit a crime of violence, a factual element that does not have to be proven in a prosecution based on the other two proscriptions in the protection order. See § 28-311.01. Because we cannot determine the elements of the conduct underlying Vice's conviction for violating the protection order, we cannot apply the *Blockburger* test to determine whether Vice was subjected to double jeopardy.

For the reasons outlined above, we find no error in the trial court's judgment denying the motion to quash.

### 3. HABITUAL CRIMINAL

The record on appeal contains abundant evidence of the prior convictions upon which Vice was found to be a habitual criminal. This assignment of error is without merit.

AFFIRMED.