C. F. SCHWARTZ V. STATE OF NEBRASKA.

FILED JUNE 18, 1902. No. 12,420.

1. Responsibility for Crime: TEST: CAPACITY: NATURE OF ACT: RIGHT AND WRONG. The generally accepted test of responsibility for crime, is the capacity to understand the nature of the act alleged to be criminal, and the ability to distinguish between right and wrong with respect to such act.

2. Moral Insanity. Moral insanity as a criminal defense, is not recognized in this state. One who knows abstractly what is right and what is wrong, must at his peril, choose the right and shun the wrong. He can not yield to a vicious impulse, and allege mere weakness of will as an excuse.

3. Instruction: REASONABLE DOUBT: SANITY. An instruction which in substance informs the jury that they can not convict unless

all the material averments of the information are established
by the evidence beyond a reasonable doubt, does not, by im-
plication, authorize a conviction without presumption or proof
of defendant's sanity.

4. ——— : ——— : DEFINITION. The giving of an instruction defining
a reasonable doubt, such instruction being identical in substance
with those considered in *Willis v. State*, 43 Nebr., 102, and *Night-
ingale v. State*, 62 Nebr., 371, *held* not to be reversible error.

5. **Instructions:** ACCOMPLICE: MORAL COERCION. An instruction in-
forming the jury that the prosecutrix, who had, under physical
and moral coercion, maintained incestuous relations with de-
fendant, was not an accomplice, *held* to state a sound and
relevant proposition.

6. **Evidence.** Evidence examined and found to sustain the verdict.

ERROR from the district court for Pawnee county.   Tried
below before STUBBS, J.   *Affirmed.*

*Lindsay & Raper,* for plaintiff in error.

*Frank N. Prout, Attorney General,* anu *Norris Brown,*
for the state.

SULLIVAN, C. J.

The defendant, Charles F. Schwartz, having been found
guilty of incest, and sentenced to imprisonment in the
penitentiary for a term of twenty years, brings to this
court for review the record of his trial.   His first and
principal contention is that the evidence was insufficient
to warrant the jury in returning a verdict in favor of the
state.   For obvious reasons we refrain from giving a cir-
cumstantial account of the events leading up to the prose-
cution.   The story is a shocking one and can not be heard
or read without feeling a painful shrinkage of pride in
humanity.   Compressed into a single sentence it is this:
The prosecuting witness, a motherless girl not yet seven-
teen, was, by the continued exertion of physical force and
parental authority, compelled to maintain incestuous
relations with the defendant for more than two years,
during which time she became pregnant and gave birth to
a child.   The defense was a denial of the facts charged and

a plea of insanity. Schwartz was a witness in his own behalf. His testimony is not convincing, but it is perfectly coherent. It is a flat denial of the alleged misconduct, together with a recital of facts tending to prove that he was insane. On the defense of insanity he is to some extent supported by eminent medical experts, but we are nevertheless well satisfied that the conclusion reached by the jury was warranted by the evidence and should be approved. Capacity to comprehend the nature and moral quality of an act determines criminal responsibility. There is no other safe or practical test. It is entirely certain that the defendant in this case did not have a well-balanced mind. He had an inherited tendency to insanity, and had in past years received treatment in a hospital for the insane. It seems, too, that he had at times illusions and delusions, but these were not in any way connected with the crime in question. He had groundless fears, and heard voices in the air, but it was not in consequence of these things that he debauched his daughter. It may be conceded that his mental powers were impaired, and his conscience blunted by disease, but that does not render him legally irresponsible. If he understood what he was doing, and knew it was wrong and deserved punishment, the obligation to control his conduct and keep within the law was absolute. Having this degree of mental capacity, he can not allege the sway of a turbulent passion as an excuse for his crime. The doctrine of moral insanity or uncontrollable impulse, upon which counsel seem mainly to rely, is not recognized in the jurisprudence of this state. *Wright v. People,* 4 Nebr., 407; *Knights v. State,* 58 Nebr., 225.

The giving of the third instruction is alleged as error. In this paragraph of the charge the material averments of the information were stated, and the jury were told that they could not find the defendant guilty, unless each and all of such averments were established by the evidence beyond a reasonable doubt. No reference was here made to the defense of insanity and upon this omission is based

defendant's criticism.   The instruction, considered by itself, is not incorrect, and considered with the rest of the charge, is certainly faultless.   By it the jury were informed that they could not convict if there was a failure of proof with respect to any material fact alleged in the information.   This falls far short of suggesting that there might be a conviction whether the defendant was sane or insane.

The fourth instruction was excepted to, and is assigned for error.   This instruction is a luxuriant amplification of the idea which in general literature and common speech is tersely and lucidly expressed by the words "reasonable doubt."   It is not an instruction to be commended, but, according to our decisions, it is not positively mischievous. *Polin v. State,* 14 Nebr., 540; *Willis v. State,* 43 Nebr., 102; *Barney v. State,* 49 Nebr., 515; *Leisenberg v. State,* 60 Nebr., 628; *Savary v. State,* 62 Nebr., 166; *Nightingale v. State,* 62 Nebr., 371.

By the sixth instruction the jury were told that the prosecutrix was not an accomplice, and that if her testimony was believed it would, without corroboration, support a conviction.   This was a correct statement of a pertinent legal proposition, and the giving of it was not error.

We are not quite sure that we understand the objection to the seventh instruction.   Its office was to define the degree of mental capacity which renders a person amenable for crime, and to advise the jury that the burden of proof with respect to the issue of insanity was on the state, after the presumption of sanity had been met by opposing proof.   It seems to be an accurate statement, except in one particular, and of that the defendant can not complain. Under it the jury were authorized to acquit if they found the defendant had been dominated by an uncontrollable impulse.   This is the law in some jurisdictions, but not here.

The judgment is

AFFIRMED.

NOTE.—Moral insanity implies merely a disorder or perversion of the moral faculties or a confusion of the ethical distinctions between right and wrong. Buswell, Insanity, par. 12, p. 15. The hardest form of moral insanity to estimate and diagnose is the *congenital moral defect—the moral imbecility* occasionally met with in cases of this reasoning mania. These patients are utterly incapable of telling the truth, or of understanding why they should do so. These are the cases that commit crime and are very dangerous to the community in which they live. They may have considerable intellectual ability. Mann, Medical Jurisprudence of Insanity, p. 136.

*Moral Insanity in Its Effect Upon a Will.*—Mere moral insanity, disorder of the moral affections and propensities, will not, unless accompanied by insane delusion, be sufficient to invalidate a will or to incapacitate a person to make one. *Boardman v. Woodman*, 47 N. H., 120, A. D. 1866.

No eccentricity or peculiarity of character, no degree of moral depravity or of unnatural feeling, not amounting to destitution of reason or mental incompetency to do the particular act, is to be considered as insanity. *Mullens v. Cottrell*, 41 Miss., 291, 292, A. D. 1866.

Moral debasement is not necessarily and of itself insanity. *May v. Jones*, 78 N. Car., 402, 406, A. D. 1878.

Moral insanity, or the perversion of the moral feelings, not accompanied with insane delusion, which is the *legal* test of insanity, *held* to be insufficient to invalidate a will. *Frere v. Peacocke*, 1 Robertson's Ecclesiastical Reports [Eng.], 442, A. D. 1846. This case was the basis of the ones which precede it in this note.

*Responsibility for Crime.*—It is not error to instruct the jury that mere mental depravity is not insanity. *Goodwin v. State*, 96 Ind., 550, 551.

The uncontrollable propensity which will relieve a person from the consequences of the commission of a crime, must have its origin alone in a diseased or insane mind. *State v. Mewherter*, 46 Ia., 88.

A party indicted is not entitled to an acquittal on the ground of insanity, if, at the time of the alleged defense, he had capacity and reason sufficient to enable him to distinguish between right and wrong, and understood the nature, character and consequence of his act, and had mental power sufficient to apply that knowledge to his own case. *Commonwealth v. Rogers*, 7 Met. [Mass.], 500.

Unless it appears that the prisoner was not conscious, at the time of the killing, that the act which he was doing was morally wrong, he is responsible, even if it be shown that he was impelled to its commission by an impulse which he was unable to resist. *Genz v. State*, 59 N. J. Law, 488.

*Rule in McNaghten's Case.*—In 1843 Daniel McNaghten was indicted for shooting to death Edward Drummond, the private secretary of Sir Robert Peel. The prisoner supposed that he had killed the premier himself. At the trial he was acquitted on the ground of insanity. There was such a popular feeling in the matter that the House of Lords propounded a question to her majesty's judges as

an abstract proposition of law, and received the following answer: "If the accused was conscious that the act was one which he ought not to do; and if the act was at the same time contrary to law, he is punishable. In all cases of this kind the jurors ought to be told that every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defense, on the ground of insanity, it must be clearly proved that at the time of committing the act the party accused was laboring under such a defect of reason, from a disease of the mind, as not to know the nature and quality of the act he was doing or as not to know that what he was doing was wrong." 10 Clark & Finnelly's Reports [Eng.], *200. This rule has been since followed in England and some of the United States. But that part of the rule relating to the burden of proof has been rejected by the supreme court of Nebraska. *Wright v. People*, 4 Nebr., 407.

In 10 Federal Reporter, in a note to *Guiteau's Case*, p. 189, Dr. Francis Wharton discusses the question of moral insanity at considerable length.

Iowa and Kentucky appear to be the only states whose courts of last resort have held squarely to the doctrine of moral insanity. *State v. Felter*, 25 Ia., 67; *Smith v. Commonwealth*, 1 Duv. [Ky.], 224. There are decisions that "squint" that way in Connecticut, Minnesota and Ohio, with some favorable nisi-prius decisions in New York. *Anderson v. State*, 43 Conn., 514, 515; *State v. Gut*, 13 Minn., 241; *Blackburn v. State*, 23 Ohio, 146. In New York, Cole's trial for shooting Hiscock, at court of oyer and terminer, Albany, November, 1868; Hogeboom, J., presiding. Remarkable Trials, vol. 2, p. 194. Macfarland's Trial, 8 Abb. Pr. [n. s.], 57; Recorder Hackett presiding.—W. F. B.