STATE OF NEBRASKA, APPELLEE, v. URBAN E. CARR, APPELLANT.
435 N.W.2d 194

Filed February 10, 1989.   No. 88-199.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and Vanessa R. Jones for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and FUHRMAN and WHITEHEAD, D. JJ.

FAHRNBRUCH, J.

The defendant, Urban E. Carr, appeals his conviction for attempted first degree sexual assault, claiming he should have been found not responsible by reason of insanity. We affirm the conviction.

Carr was charged with attempted first degree sexual assault for attacking a 76-year-old woman as she was walking her dog in Omaha on April 27, 1987. Carr was found to be incompetent to stand trial and was committed to the Lincoln Regional Center. On October 27, 1987, Carr was judged competent to stand trial. He was found guilty after a November bench trial. By stipulation, evidence at the trial consisted of police and mental health reports.

After reviewing reports prepared by mental health professionals, the court at the sentencing hearing found Carr to be a mentally disordered sex offender with a treatable disorder. Carr was sentenced to not less than 4 nor more than 6 years' imprisonment. He was ordered committed to the Lincoln Regional Center for treatment, pursuant to Neb. Rev. Stat. § 29-2915 (Reissue 1985).

Attempted first degree sexual assault is a Class III felony.

Neb. Rev. Stat. §§ 28-201 and 28-319 (Reissue 1985). A Class III felony carries a penalty of not less than 1 nor more than 20 years' imprisonment, up to a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985).

Carr raised the defense of not responsible by reason of insanity.

As a defense to a charge against an accused, insanity must be shown to exist at the time of the offense charged. *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986); *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

Neb. Rev. Stat. § 29-2203 (Reissue 1985) in part provides:

> Any person prosecuted for any offense may plead that he or she is not responsible by reason of insanity at the time of the offense and in such case the burden shall be upon the defendant to prove the defense of not responsible by reason of insanity by a preponderance of the evidence.

In Nebraska, the test for insanity as a defense in a criminal case is whether an accused at the time of committing the crime had the capacity to understand the nature of the act committed and whether the accused was able to distinguish right from wrong with respect to the act committed. See *State v. Robertson, supra.* To take advantage of the insanity defense, a defendant must prove, by a preponderance of the evidence, that at the time of the crime the defendant had a mental defect (such as feeblemindedness) or a mental disease which impaired the defendant's mental capacity to such an extent that the defendant either (1) did not understand the nature and consequences of what the defendant was doing *or* (2) did not understand that what the defendant was doing was wrong and that the defendant could be punished. See, *State v. Robertson, supra*; *Thompson v. State*, 159 Neb. 685, 68 N.W.2d 267 (1955); *Washington v. State*, 165 Neb. 275, 85 N.W.2d 509 (1957); *Schwartz v. State*, 65 Neb. 196, 91 N.W. 190 (1902).

Carr was evaluated by two psychiatrists. One of the psychiatrists, Dr. Bruce D. Gutnik, prepared a report after evaluating Carr on May 4, 1987. Dr. Gutnik concluded that it was impossible to determine whether Carr was sane or insane at the time of the crime because Carr was too psychotic to

cooperate with the evaluation.

After reevaluating Carr on October 5, 1987, Dr. Gutnik reported the following:

> With regard to sanity or insanity at the time of the alleged crime, it is difficult to state an opinion since Mr. Carr denies having been involved in the crime. With reasonable medical certainty, Mr. Carr's condition has been serious and psychotic for quite some time and I believe he was most likely psychotic at the time of the alleged crime. Whether or not he was legally insane at the time of the alleged crime is another question entirely and with the information available to me at this time I cannot make a distinct determination.

A third report prepared by Dr. Gutnik on October 20, 1987, which is based only on a review of his two earlier evaluations, concludes that at the time of the attempted evaluation of Carr on May 4, 1987, Carr would have been deemed legally insane, since he did not know rightness or wrongness of his acts, nor at that time did he understand the consequences of his behaviors either to others or to himself. Dr. Gutnik points out that the alleged crime occurred on April 27, 1987, about a week before he attempted the first evaluation. Because of the close proximity in the time, Dr. Gutnik concluded, after reviewing all of the information, Carr was most likely, with reasonable medical certainty, insane at the time of the alleged crime. He based this conclusion on the fact that a mere week after the time of the alleged crime Carr was quite insane.

The other examining psychiatrist, Dr. L.E. Woytassek, made no determination as to whether the defendant was sane or insane at the time of the crime, but addressed only Carr's competency to stand trial.

A police report entered into evidence states that at the time of his arrest, Carr talked in a very incoherent manner and would not answer questions. The reporting officer stated that when he attempted to give Carr his *Miranda* rights, Carr continued to talk, claiming that he was Jesus Christ and that he lived with God, and would not talk further. While en route to the police station, Carr told a police officer, "I've been bad tonight."

The victim told police she noticed Carr behind her as she was

walking her dog. She hurried across the street to enter her home. Carr grabbed her from behind, lifted her, and carried her to a parking lot. The victim reported that as she was being carried, Carr punched her in the head and face numerous times. The victim yelled and fought as she was being attacked. Four men who were walking near the scene heard the victim yelling for help. One of the witnesses reported that he saw Carr on top of the victim and that the victim was kicking in an effort to get away. The witness yelled, "hey," and Carr got up and ran. Carr was arrested as he was leaving the area.

The reports state that the morning after the crime, Carr was taken to a police interview room, where he was advised of his *Miranda* rights. Carr answered yes to all questions and indicated to the officer that he would talk about his arrest. The officer reported that during the interview Carr appeared to be very knowledgeable as to the fact that an older woman was with a dog in the general area where he was the night of the crime, but was adamant in saying that he did not attack her.

The trial court found that Carr voluntarily, intelligently, and understandingly waived his right to trial by jury and proceeded with a bench trial. Carr relied on the defense of not responsible by reason of insanity. By stipulation, trial was had on written police reports concerning the crime and mental health reports on the defendant.

The court found that Carr committed the acts charged. In determining whether Carr met his burden of proving by a preponderance of the evidence that he was insane within the legal meaning of that term, the court considered all three of Dr. Gutnik's reports. The court noted that Dr. Gutnik twice stated that it was impossible for him to give an opinion on insanity and that Dr. Gutnik made the determination that Carr was insane without any additional information. This court has repeatedly held that triers of fact are not required to take opinions of experts as binding upon them. *Joyner v. Steenson*, 227 Neb. 766, 420 N.W.2d 278 (1988); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985).

The court also considered Carr's previous mental difficulties and institutionalizations. These led the court to believe Carr was aware of how he should act in a situation of this kind. The

court questioned whether Carr feigned incoherence immediately after his arrest. The court noted that at 9 a.m. the next morning Carr was perfectly coherent. The court found Carr failed to prove by a preponderance of the evidence that he was insane at the time of the crime.

The verdict of the finder of fact on the issue of insanity will not be disturbed unless the evidence is not sufficient to support the findings. *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986).

Defendant's conviction and sentence are affirmed.

AFFIRMED.