STATE OF NEBRASKA, APPELLEE, V.
RICHARD A. SCHMIDT, SR., APPELLANT.
562 N.W.2d 859

Filed April 22, 1997.   No. A-96-259.

Bruce E. Stephens for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, MUES, and INBODY, Judges.

MUES, Judge.

## I. INTRODUCTION

A jury found Richard A. Schmidt, Sr., guilty of committing the crimes of kidnapping, false imprisonment in the first degree, third degree assault, and attempted sexual assault in the first degree. Thereafter, he was sentenced to terms of imprisonment of 30 to 40 years for kidnapping; 4 to 5 years for first degree false imprisonment; 1 year for third degree assault; and 8 to 12 years for attempted first degree sexual assault, all sentences to run concurrently. Schmidt appeals, asserting various errors at both his trial and sentencing.

## II. STATEMENT OF CASE

On June 2, 1995, the victim left Maryland en route to Idaho for a job interview. At approximately 10:30 p.m. on June 3, the victim, intending to sleep for a while, stopped at the rest area located east of York, Nebraska, off of Interstate 80. She awoke at approximately 3:30 a.m. and discovered that both tires on the passenger side of her vehicle were flat. Prior to this, she had had no problems with her tires, and she did not recall hitting any-

thing which could have caused the flat tires. As she began searching for her spare tire, Schmidt approached her to offer his assistance. Schmidt replaced her front tire with her spare, removed her back tire, and then offered to take her into town to get her tires fixed. She accepted this offer.

Before getting into Schmidt's white van, the victim noticed the vehicle's license plate number. She also noticed binoculars and duct tape inside the van. The two proceeded toward York, exiting the Interstate at Highway 81. Schmidt eventually turned off Highway 81 onto another road and directed her attention out of the passenger window. Schmidt then began hitting her on the side of her head. When the victim attempted to leave Schmidt's vehicle, Schmidt pulled her back inside. Throughout this struggle, Schmidt's van continued to roll slowly. When Schmidt had to let go of the victim to prevent the vehicle from driving off the road, she escaped and began to run. Schmidt then began chasing her in his van, at which time she ran into a ditch, where she fell. Before she could get up, Schmidt got on top of her and she flipped onto her back. Schmidt began striking her in the head with his fists. According to the victim, she told Schmidt to " '[p]lease stop. I'll do anything,' " but she continued to scream. Eventually, Schmidt stated something to the effect of " '[t]o hell with it,' " got up, and walked away.

The victim then got up and, with her shirt in her hand, began to run. Both the victim's shirt and her bra had been removed during the course of the struggle. Schmidt proceeded to remove her tires from his van and stated, " 'Here is your stuff.' "

At approximately 4 a.m., the victim contacted police from the Palmer Inn. York police officers Kim Christensen and Michael Fitzpatrick responded to the call. According to Fitzpatrick, the victim was "hysterical," and both sides of her face were red with the appearance of some possible bruising. Christensen testified that the victim provided a description of her attacker as well as her attacker's vehicle, including its license plate number. The victim also directed police to the scene of the incident, where they found cigarette butts, a man's boot, and two tires. Fitzpatrick returned to the scene after daylight, at which time he found a skid mark and a bra.

Police discovered that the van was registered to Schmidt. Schmidt was arrested on June 6, 1995, and he signed a *Miranda* rights waiver form. Schmidt advised police of the van's location and gave his permission to search it. The van was located on an abandoned farmstead, covered with tarps, with its license plates removed, and it was impounded. Inside the van, police found Canyon cigarettes, the same brand of cigarettes as the butts which were found at the scene. Schmidt also gave officials permission to search his pickup truck, in which was found a pair of black binoculars, a knife in a sheath, and a roll of gray duct tape. At trial, the victim identified the binoculars and duct tape as items that she saw in Schmidt's van. She also identified her bra, which was located at the scene, and Schmidt as her attacker.

Christensen testified that he observed the victim's tires and found small puncture marks on the sidewalls of both of them. The victim's tires were eventually repaired by Mogul Transmission, Inc. Ronald John Mogul, president of the repair shop, testified that the tire holes were caused by punctures, and not by a road hazard. According to Mogul, the knife found in Schmidt's pickup was capable of producing this type of puncture; however, Mogul also testified that virtually any knife could have caused the holes.

At the close of the State's case, Schmidt moved for a directed verdict as to the kidnapping, first degree false imprisonment, and attempted first degree sexual assault charges. This motion was overruled. Schmidt presented no evidence, and the case was submitted to the jury. On January 10, 1996, the jury returned its verdict, finding Schmidt guilty on all counts. Schmidt was sentenced, as set forth above, on February 13, 1996. He timely appeals.

## III. ASSIGNMENTS OF ERROR

Schmidt asserts that the trial court erred in (1) denying his plea in abatement, (2) failing to dismiss the charges or impose sanctions due to prosecutorial misconduct, (3) allowing Schmidt's undisclosed statements to police to be used against him at trial, (4) failing to grant Schmidt's motion for a mistrial, (5) allowing testimony with regard to the victim's tires, (6)

denying Schmidt's motion to dismiss, (7) failing to give Schmidt's requested jury instructions, (8) giving certain jury instructions, (9) allowing testimony at the sentencing hearing of uncharged misconduct, and (10) imposing excessive sentences.

## IV. STANDARD OF REVIEW

The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent an abuse of discretion. *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. McBride*, 250 Neb 636, 550 N.W.2d 659 (1996); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

The proper instruction of a jury is a question of law. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997); *State v. Hawes*, 251 Neb. 305, 556 N.W.2d 634 (1996).

A sentencing court has broad discretion in the source and type of evidence that it may use in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Hoffman*, 246 Neb. 265, 517 N.W.2d 618 (1994).

## V. DISCUSSION

### 1. Plea in Abatement

In his first assigned error, Schmidt contends that the trial court erred in overruling his plea in abatement because the evidence at the preliminary hearing was insufficient to show probable cause as to the kidnapping, false imprisonment, and attempted sexual assault charges. Schmidt also argues that the county court failed to address the charge of kidnapping.

An amended complaint, filed on June 9, 1995, charged Schmidt with kidnapping, false imprisonment in the first degree, third degree assault, and attempted sexual assault in the first degree. At the preliminary hearing, the county court specif-

ically referenced the kidnapping charge and at the close of the evidence, found probable cause to believe Schmidt committed the crime of kidnapping. Schmidt's argument in this regard is without merit.

■ Regarding the sufficiency of the evidence, any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990). Thus, the question becomes whether the evidence is sufficient to support the verdict. As will be discussed in more detail below, we find that it is. The trial court did not err in overruling Schmidt's plea in abatement.

## 2. PROSECUTORIAL MISCONDUCT

Schmidt's second, third, and fourth assigned errors are based on alleged prosecutorial misconduct. First, Schmidt alleges that the court erred in failing to impose sanctions based on various discovery violations, including the prosecutor's nondisclosure of a statement made by Schmidt to police and attested to at trial by Fillmore County Sheriff William Burgess. Schmidt also argues that the trial court erred in failing to strike Burgess' testimony in this regard and in failing to grant Schmidt's motion for a mistrial based on the same. The record reveals a long history of discovery problems between these two attorneys which, unfortunately, must be set out in this opinion.

### (a) Discovery

On August 23, 1995, Schmidt filed a motion for sanctions or to compel discovery in which he alleged that he had received no response to his motion for discovery within the agreed-upon time period of 10 days and that he had been refused access to various items. A hearing was held on November 3, at which evidence in the form of affidavits and correspondence was admitted, from which we conclude the following:

Schmidt's attorney was initially denied access to various items because he was not yet Schmidt's attorney of record. By letter dated July 21, 1995, the prosecutor informed Schmidt's attorney that he would be allowed statutory discovery upon the court's order. Schmidt's motion for discovery pursuant to Neb.

Rev. Stat. § 29-1912 (Reissue 1995) was filed on this same date. In this motion, Schmidt sought, among other things, to inspect and copy the following:

(a) The Defendant's statement, if any, including any written statement made by the Defendant and signed or otherwise adopted or approved by him, or any stenographic, mechanical, electrical, or other recording or any transcription thereof that is a substantially verbatim recital of an oral statement made by the Defendant to an agent of the prosecution, state, or political subdivision thereof, and recorded contemporaneously with the making of such oral statement;

. . . .

(d) Documents, papers, books, accounts, letters, photographs, objects, or other tangible things of whatsoever kind or nature that could be used as evidence by the prosecuting authority.

No order is contained in the file, but the State stipulated that the trial court granted Schmidt's motion, and the order appears to have been entered on or about July 25, 1995. On or about September 1, Schmidt received a copy of his statement and a list of possible physical evidence to be used at trial. The victim's tires were included in this list. On September 6, Schmidt requested a copy of his *Miranda* warning form and consent to search form and the opportunity to view various items of physical evidence. By letter dated September 7, 1995, the prosecutor sent Schmidt copies of the requested forms and instructed that he had advised the police department to allow Schmidt's counsel access to all the evidence in its possession. On September 28, Schmidt's attempt to view photographs in possession of the York County Attorney's office was denied by a secretary who had not been told that such was authorized. Schmidt's attorney's attempt to view physical evidence in possession of the police department was also denied on this same date by a police officer. By letter dated September 29, 1995, the prosecutor acknowledged the misunderstanding and informed counsel for Schmidt that the police department had been instructed again to allow him access to all evidence in its pos-

session and that counsel was further free to view the photographs in the county attorney's office.

By affidavit, the prosecutor stated that he had not been notified of the need to make arrangements on September 28, 1995, that he was out of town on said date, and that neither the police department nor his office knew what to do in his absence. The prosecutor further stated that as soon as he learned of the misunderstanding, he took steps to cure it. Thereafter, Schmidt's counsel requested to view the evidence on October 3 and was allowed to do so on that same date.

Following the November 3, 1995, hearing, the motion for sanctions filed in August (before many of these events even occurred) was overruled. However, the State was ordered to notify Schmidt's attorney of the existence and location of the victim's tires. On November 3, Schmidt filed a motion in limine asking the court to preclude the State from offering evidence regarding how the victim's tires became flat. On November 30, this motion was overruled.

### (b) Schmidt's Undisclosed Statement
### Attested to by Burgess

At trial, Burgess testified in response to direct examination: "Q. Did you have any contact with the van on the 6th? A. No. Q. Why not? A. Mr. Schmidt had indicated that someone had stolen his van on Saturday night."

Without objection, the direct examination of Burgess continued, and Schmidt conducted a short cross-examination of Burgess. The State proceeded to call its next witness, Trooper Michael O'Neal. Schmidt then requested a hearing outside the jury's presence, at which he contended that, contrary to the court's discovery order, he had received no notice of Schmidt's statement to police that his van had been stolen. Schmidt then objected to any further testimony by O'Neal (on the theory that he would also attest to this statement) and moved for a mistrial. The motion for mistrial was overruled. The propriety of this ruling will be discussed below. Schmidt's request to strike Burgess' testimony was also overruled. No ruling was made with regard to whether the statement attested to by Burgess

should have been disclosed pursuant to the court's discovery order.

### (c) Sanctions

In his second assigned error, Schmidt contends that the trial court erred by not imposing sanctions due to prosecutorial misconduct. In support, Schmidt argues:

> In light of the difficulties the Defendant [Schmidt] was having in getting discovery of even the physical evidence . . . let alone the complete refusal to disclose the existence of a statement made by the Defendant [Schmidt], codified into Sheriff Burgess' report, it becomes clear that this is another case of "hide the ball" . . . .

Brief for appellant at 27.

Schmidt's motion for discovery, previously set forth, is in language substantially identical to that of § 29-1912, which defines the scope of discovery in criminal cases. The State stipulated that the trial court granted Schmidt's discovery motion. Neb. Rev. Stat. § 29-1919 (Reissue 1995) provides:

> If, at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with the provisions of sections 29-1912 . . . the court may:
>
> (1) Order such party to permit the discovery or inspection of materials not previously disclosed;
>
> (2) Grant a continuance;
>
> (3) Prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed; or
>
> (4) Enter such other order as it deems just under the circumstances.

To the extent that Schmidt is appealing from the trial court's denial of his motion for sanctions filed in August 1995 and heard in November, we affirm. Section 29-1919 has been interpreted to provide the trial court broad discretion to enter such orders as it deems just. See *State v. Surber*, 221 Neb. 714, 380 N.W.2d 293 (1986). Included within this discretion is the decision to enter no order at all. See *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980). Based on the evidence introduced

at the November hearing, the trial court did not abuse its discretion in refusing to impose sanctions based on the State's actions up to that point.

To the extent that Schmidt is seeking sanctions based on the prosecutor's failure to disclose Schmidt's statement, attested to by Burgess, he made no request for such at trial. Moreover, relief under § 29-1919 necessarily requires a finding that the prosecutor's actions violated § 29-1912. Although the parties argued the issue, the trial court made no finding in this regard. On appeal, the State argues that disclosure of the statement is not required under § 29-1912 because it was not a substantially verbatim recital recorded contemporaneously. The State made a similar argument in *State v. Neujahr*, 95 NCA No. 20, case No. A-94-663 (not designated for permanent publication), a case involving these same two attorneys. In *Neujahr*, this prosecutor failed to answer Neujahr's discovery questions until several months after discovery was ordered and only 4 days before trial. When he finally did answer, this prosecutor denied being in possession of any statements by Neujahr. The prosecutor then proceeded to use oral statements made by Neujahr and recorded in police reports against Neujahr at trial, arguing that § 29-1912 requires discovery of only written or recorded statements. We stated in *Neujahr* that the record was inadequate to fully address the issue but noted that if the case did not already need to be retried on other grounds, "the matter would cause us great concern." 95 NCA No. 20 at 41. On review, the Supreme Court, reversing on other grounds the Court of Appeals' decision, addressed the timeliness of the State's answer and stated, "The discovery process is not a game of 'hide the ball.'" *State v. Neujahr*, 248 Neb. 965, 976, 540 N.W.2d 566, 574 (1995). The Supreme Court also noted, assuming without deciding that the State was required to disclose Neujahr's oral statements contained in a police report pursuant to § 29-1912, that its failure to do so in that case was not prejudicial.

Once again, our record is insufficient to address whether the statement of Schmidt at issue comes within the purview of § 29-1912. Aside from the prosecutor's argument in opposition to Schmidt's motion for a mistrial in which he references a "report," the record fails to establish whether Schmidt's state-

ment was recorded anywhere, let alone whether the recording of such was "substantially verbatim" or made "contemporaneously" as required by § 29-1912. Without a record establishing that the prosecutor did in fact violate § 29-1912, we cannot find that the trial court abused its discretion in failing, upon its own motion, to impose sanctions pursuant to § 29-1919. This assignment of error must fail.

### (d) Motion for Mistrial

In his third and fourth assigned errors, Schmidt asserts that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct and in refusing to strike Burgess' testimony. These assigned errors fail for the reasons already discussed. Without an adequate record, it is impossible for this court to find prosecutorial misconduct based on the failure to disclose the statement at issue. Even assuming § 29-1912 required disclosure of this statement and the failure to disclose it constitutes prosecutorial misconduct, Schmidt failed to show that these actions caused a substantial miscarriage of justice.

Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995); *State v. Ramold*, 2 Neb. App. 545, 511 N.W.2d 789 (1994). A showing of actual prejudice rather than the mere possibility of prejudice is required. *State v. Valdez*, 239 Neb. 453, 476 N.W.2d 814 (1991). Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994).

The theory of Schmidt's defense, as explained to the jury in opening argument, was that while Schmidt was willing to admit to assaulting the victim, the evidence was insufficient to establish that he had the requisite intent to commit the other crimes with which he was charged. Thus, that it was Schmidt at the rest area on the night in question driving the white van was never an issue. Schmidt contends, however, that he was prejudiced because the use of his nondisclosed statements corroborated the State's argument that Schmidt had made calculated actions to hide his involvement in the crimes. However, the other uncon-

tested evidence admitted at trial established that Schmidt's van was located by police on an abandoned farmstead, covered with tarps, with the license plates removed. We fail to see how Schmidt was actually prejudiced by virtue of this one statement, neither elicited nor expanded upon by the State. At the same time, we fail to see what the prosecution gains by wasting the State's resources playing "hide the ball" when the State's case is in no way benefited by not disclosing the statement.

"The impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous." *State v. Benzel*, 220 Neb. 466, 477-78, 370 N.W.2d 501, 511 (1985). While the use by the trial court of curative measures is one factor to consider, see *State v. Greeno*, 230 Neb. 568, 432 N.W.2d 547 (1988), even absent the granting of Schmidt's motion to strike Burgess' testimony, we do not believe Schmidt showed actual prejudice rather than the mere possibility of prejudice in this case. These assigned errors are without merit.

### 3. EVIDENCE AS TO VICTIM'S TIRES

In his fifth assigned error, Schmidt contends that the court erroneously accepted certain evidence over his objection. According to Schmidt, the court should not have allowed the testimony of Christensen or of Mogul regarding their observations of the puncture marks in the victim's tires because the tires were not preserved as evidence. Schmidt fails to cite any authority to support this contention.

As previously set forth, Schmidt filed a motion in limine on November 3, 1995, seeking an order precluding the State from offering evidence regarding how the victim's tires became flat. Schmidt based his motion on the grounds of speculation, lack of foundation, and the "best evidence" rule. Schmidt also alleged in his motion that when he went to view the tires, he was informed by police that they did not have the tires. Schmidt's motion was overruled.

At trial, over a foundation and narrative objection, Christensen testified that he observed the victim's tires and saw puncture marks on the sidewalls of both tires. Mogul testified,

without objection, that one of the victim's tires had one puncture in the sidewall while the other had two punctures in the sidewall. Over a foundation objection, Mogul testified that the holes were caused by punctures, and not by a road hazard. Mogul was shown the knife seized from Schmidt's vehicle, and he testified, over a foundation objection, that Schmidt's knife was capable of producing the type of puncture holes observed in the victim's tires. On cross-examination, Mogul testified that virtually any knife could have caused the holes in the victim's tires.

Although Schmidt contends on appeal that the testimony was improper based on the failure by police to preserve the tires as evidence, Schmidt failed to object on this basis at trial. The fact that he may have raised this issue in his motion in limine does not preserve this issue for appeal. When a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. *State v. Jensen*, 238 Neb. 801, 472 N.W.2d 423 (1991); *State v. Nelson*, 235 Neb. 15, 453 N.W.2d 454 (1990). A party is barred from asserting a different ground for his or her objection to the admission of evidence on appeal than was offered before the trier of fact. *State v. Jensen, supra.* See, also, *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). Because Schmidt failed to object to this testimony at trial on the basis that police failed to preserve the tires as evidence, he is precluded from making this argument on appeal.

Further, Schmidt does not suggest how an inspection of the tires by him would have aided his defense. Additionally, there is nothing in the record to suggest that the police acted in bad faith when returning the tires to the victim, thus giving rise to due process concerns. See, *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988) (holding that unless defendant can show bad faith on part of police, failure to preserve evidence does not constitute denial of due process of law); *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992); *State v. Tanner*, 233 Neb. 893, 448 N.W.2d 586 (1989). To the contrary, Christensen testified that the tires were repaired and returned to the victim's vehicle because the victim had no

money to purchase new tires and there was an urgency on her part to leave immediately in order to get to her scheduled job interview in Idaho. This assigned error is without merit.

### 4. MOTION TO DISMISS

In his sixth assigned error, Schmidt argues that the trial court erred in denying his motion to dismiss the kidnapping, false imprisonment, and attempted sexual assault charges, made after the State rested. As previously set forth, Schmidt presented no evidence after the State's case in chief.

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law. *State v. McBride, supra*; *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994).

Schmidt's reliance on *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992), and *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992), *both overruled by State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995), is misplaced. As explained in *Pierce*:

> Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: "In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction."

*Id.* at 548, 537 N.W.2d at 330-31.

█ With regard to attempted sexual assault in the first degree, the State had to show, according to the law in effect at the time of this crime, that Schmidt took a substantial step in a course of conduct intended to culminate in sexual penetration and overcoming the victim by force, threat of force, coercion, or deception. Neb. Rev. Stat. §§ 28-319(1)(a) (Cum. Supp. 1994) and 28-201 (Reissue 1995). Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact. *State v. Green*, 238 Neb. 475, 471 N.W.2d 402 (1991).

In *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993), *overruled on other grounds, State v. Pierce, supra*, the Supreme Court upheld Covarrubias' conviction of attempted sexual assault in the first degree. In that case, after dancing twice with the victim at a nightclub, Covarrubias agreed to take the victim home. En route, Covarrubias claimed he was having car trouble and left the Interstate. He then claimed his vehicle would not start. Covarrubias proceeded to grab the victim's breasts and crotch while stating, " ' "Come on; let's do it." ' " and " ' "This wouldn't be your first time." ' " *Id.* at 369, 507 N.W.2d at 250. When the victim attempted to leave the vehicle, Covarrubias locked the door and held on to her arm, leg, and sweatshirt. When the victim escaped by sliding out of her sweatshirt, Covarrubias followed her and grabbed her again. The victim then hit Covarrubias in the stomach and ran for help.

In *State v. Carr*, 231 Neb. 127, 435 N.W.2d 194 (1989), the Supreme Court upheld Carr's conviction of attempted sexual assault in the first degree for his attack of a 76-year-old woman who was out walking her dog. In that case, Carr grabbed the woman from behind, lifted her up, and carried her to a parking lot. In the course of a struggle, Carr struck the woman in the head several times. A witness testified that he saw Carr on top of the victim before Carr ran away.

In this case, the victim was taken to a somewhat isolated spot, at which time Schmidt began hitting her in the head. When she attempted to escape his vehicle, Schmidt grabbed on to her and continued hitting her. Upon her escape, Schmidt chased her and eventually ended up on top of her in a ditch. During the course of the struggle, the victim's shirt and bra were removed.

Viewing the evidence in a light most favorable to the State, we find this evidence sufficient for a jury to conclude that Schmidt's actions were intended to culminate in sexual penetration and overcoming the victim through the use of force, threat of force, coercion, or deception.

Regarding the kidnapping charge, Schmidt was charged, in the alternative, with abducting or restraining the victim with the intent to terrorize her or commit a felony, in violation of Neb. Rev. Stat. § 28-313(1) (Reissue 1995). In a separate instruction, the jury was advised that for the purpose of the kidnapping charge, the crime of attempted sexual assault in the first degree is a felony. For the purpose of kidnapping, Neb. Rev. Stat. § 28-312 (Reissue 1995) provides:

(1) Restrain shall mean to restrict a person's movement in such a manner as to interfere substantially with his liberty:

(a) By means of force, threat, or deception . . .

. . .

(2) Abduct shall mean to restrain a person with intent to prevent his liberation by:

(a) Secreting or holding him in a place where he is not likely to be found; or

(b) Endangering or threatening to endanger the safety of any human being.

As to the false imprisonment charge, Neb. Rev. Stat. § 28-314(1) (Reissue 1995) provides:

A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (a) under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury; or (b) with intent to hold him in a condition of involuntary servitude.

"Intent" is the state of the actor's mind when the actor's conduct occurs. *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). The intent operative at the time of an action may be inferred from the words and acts of an accused and from the facts and circumstances surrounding the conduct. *Id.*

Again, viewing the evidence in a light most favorable to the State, Schmidt punctured the victim's tires and under the pre-

tense of helping her, took her to a remote area at approximately 3:30 a.m. Schmidt then prevented her from leaving his van by hitting her and holding on to her. When she finally escaped, Schmidt jumped on top of her and, while continuing to strike her, prevented her from getting up. Based on the evidence and aforementioned standard, we find the trial court properly denied Schmidt's motion for a directed verdict at the close of the evidence. Submitting these charges to the jury was proper.

### 5. JURY INSTRUCTIONS

In his seventh and eighth assigned errors, Schmidt contends that the trial court erred in instructing the jury. Specifically, Schmidt argues that the trial court erred in (1) instructing the jury to consider the crimes of kidnapping, false imprisonment, and third degree assault as three separate offenses and (2) overruling Schmidt's request to instruct the jury as to attempted sexual assault in the second and third degrees as lesser-included offenses of attempted sexual assault in the first degree. We will address each argument separately.

### (a) Kidnapping, False Imprisonment, and Assault

In this case, the jury was instructed as to the elements of each count separately, that is, the elements of kidnapping, false imprisonment in the first degree, assault in the third degree, and attempted sexual assault in the first degree. The jury was further instructed that it must separately consider the four crimes charged. No lesser-included offense instruction was given.

Although not articulated as such, Schmidt's argument, in essence, is that by the court's instructing the jury to separately consider the crimes of kidnapping, false imprisonment, and third degree assault, he was punished more than once for the same crime, in violation of the Double Jeopardy Clause.

■■■ The constitutional prohibition against double jeopardy protects one from being prosecuted for the same crime following acquittal or conviction, and also from being punished for the same offense more than once. See, U.S. Const. amend. V; Neb. Const. art. I, § 12; *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987); *State v. Smith*, 3 Neb. App. 564, 529 N.W.2d 116 (1995). The applicable rule for a double jeopardy analysis was discussed in *State v. Stubblefield*, 249 Neb. 436, 442, 543 N.W.2d 743, 747 (1996):

In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. In both the multiple punishment and multiple prosecution contexts, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried cannot survive the *"Blockburger"* test. *United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). . . .

In other words, the *Blockburger*, or "same-elements," test asks whether each offense contains an element not contained in the other. *Id.* If not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. *Id.*; *Blockburger v. United States, supra.* If so, they are not the same offense and double jeopardy is not a bar to additional punishment or successive prosecution. *U.S. v. Dixon, supra.*

Under this test, a person may be prosecuted for multiple offenses based on the same conduct so long as each offense requires proof of a factual element which the other does not. *State v. Vice*, 2 Neb. App. 930, 519 N.W.2d 564 (1994). The elements of each crime as charged are as follows: Section 28-313(1) provides: "A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following: . . . (c) Terrorize him or a third person; or (d) Commit a felony[.]" Section 28-314(1) provides:

A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (a) under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury; or (b) with intent to hold him in a condition of involuntary servitude.

Neb. Rev. Stat. § 28-310(1) (Reissue 1995) states: "A person commits the offense of assault in the third degree if he: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) Threatens another in a menacing manner."

Whereas kidnapping requires proof of intent to terrorize or intent to commit a felony, neither false imprisonment nor third degree assault does. See, also, *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994) (it is intent to terrorize which distinguishes kidnapping from false imprisonment); *State v. Miller*, 216 Neb. 72, 341 N.W.2d 915 (1983) (kidnapping requires proof of specific intent, which is not element of false imprisonment); *State v. Newman, ante* p. 291, 559 N.W.2d 764 (1997) (false imprisonment is not lesser-included offense of kidnapping). Whereas false imprisonment requires proof of terrorizing circumstances or circumstances which expose another to the *risk* of *serious* bodily injury, neither kidnapping nor third degree assault requires proof of either. See *State v. Miller*, 216 Neb. at 74, 341 N.W.2d at 917 ("[a]n abduction might occur under terrorizing circumstances even though there was no intention on the part of the abductor to terrorize the victim"). And finally, while third degree assault requires proof of bodily injury, neither kidnapping nor false imprisonment does.

█ Because kidnapping, false imprisonment, and third degree assault each require proof of an element the other does not, we find the Double Jeopardy Clause does not prohibit prosecution, punishment, or both for each offense. The trial court did not err in instructing the jury to consider each crime separately.

(b) Attempted Sexual Assault in First Degree

Schmidt also contends that the jury should have been instructed as to attempted sexual assault in the second and third degrees as lesser-included offenses of attempted sexual assault in the first degree. We construe Schmidt's proposed instructions, while inaccurate and confusing, to request instructions on these lesser crimes.

█ The Nebraska Supreme Court stated in *State v. Williams*, 243 Neb. 959, 965, 503 N.W.2d 561, 566 (1993), that a trial court must instruct a jury on a lesser-included offense if

(1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

This approach is known as the statutory-elements approach. It replaced the cognate-evidence approach, which, prior to *Williams*, had been used to determine whether a lesser-included offense instruction was warranted. See *id.*

The initial determination, whether the lesser offense is a lesser-included offense of the crime charged, is made by looking only to the statutory elements of the two criminal offenses. *Id.* When comparing the statutory elements of the offenses, if it is impossible to commit the greater offense without also committing the lesser offense, then the lesser offense is a lesser-included offense of the crime charged. *Id.* Stated another way, a lesser-included offense is one which has statutory elements which are entirely embraced within the elements of the greater offense. *Id.*; *State v. Malone*, 4 Neb. App. 904, 552 N.W.2d 772 (1996).

Before addressing the statutory elements of these crimes, we address the State's argument that there can be no lesser-included offenses of an attempted crime. We are aware that this was the rule under the cognate-evidence approach. See *State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990), *overruled by State v. Williams, supra* (readopting statutory-elements approach and overruling *Garza* to extent that that case relied upon cognate-evidence approach). Under the cognate-evidence approach, an offense could be a lesser-included offense, even though it had elements which the greater crime did not. See *State v. Grant*, 242 Neb. 364, 495 N.W.2d 253 (1993), *overruled by State v. Williams, supra.* A determination regarding lesser-included offenses under the cognate-evidence approach required one to focus on the evidence supporting the charge rather than the statutory elements of each crime. *Id.* Thus, the *Garza* court, in returning to the rule that there could be no lesser-included crimes of attempted crimes reasoned: "As an attempted crime may be committed in an infinite variety of ways by acts which without the requisite intent are entirely innocent, the doctrine, under the cognate theory readopted earlier, simply becomes unworkable in the context of attempted crimes." 236 Neb. at 208, 459 N.W.2d at 743.

This court already determined that this same rationale does not apply under the statutory-elements approach. See *State*

*v. Al-Zubaidy, ante* p. 327, 559 N.W.2d 774 (1997). Compared to the cognate-evidence approach, which required an examination of the evidence in each case, the statutory-elements approach is much more limited in that a court looks first to the statutory elements when making the lesser-included offense decision. Accordingly, in *Al-Zubaidy*, we determined that the general two-step approach of *State v. Williams, supra*, applies equally to attempted crimes.

While not expressly stated in *Al-Zubaidy*, even under a strict statutory-elements approach, the determination of what constitutes a lesser-included offense in the context of attempted crimes is potentially as "unworkable" as it was under the cognate-evidence approach unless the elements compared are restricted to the elements of the crime being attempted. That is, whatever the approach used, attempted crimes may be committed in an infinite variety of ways, a fact of law and life recognized in *Garza*, and not addressed in *Williams*. In short, if in *Al-Zubaidy* we correctly determined that *Williams* resurrected lesser-included offenses of attempted crimes, the only rational analysis of the lesser-included offense doctrine in the context of attempted crimes must focus, in the first instance, on the elements of the choate crime itself, as was done in *Al-Zubaidy*.

Section 28-319(1)(a) provides: "Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception . . . is guilty of sexual assault in the first degree."

The definition of penetration is set forth in Neb. Rev. Stat. § 28-318(6) (Reissue 1989), which provides:

> Sexual penetration shall mean sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen[.]

Sexual assault in the second and third degrees is defined in Neb. Rev. Stat. § 28-320(1) (Reissue 1989) as follows: "Any person who subjects another person to sexual contact and (a)

overcomes the victim by force, threat of force, express or implied, coercion, or deception . . . is guilty of sexual assault in either the second degree or third degree."

Whereas sexual assault in the second degree requires the one charged to cause serious personal injury to the victim, a person commits sexual assault in the third degree if he does not cause serious personal injury to the victim. § 28-320(2) and (3). As relevant to these offenses, § 28-318 provides:

(4) Serious personal injury shall mean great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ;

(5) Sexual contact shall mean the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

Applying the first step of the analysis in *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), we conclude that one can commit sexual assault in the first degree without committing sexual assault in the second degree, since the latter requires serious bodily injury, an element not found in first degree sexual assault. Sexual assault in the second degree is therefore not a lesser-included offense of sexual assault in the first degree.

Under the strict statutory-elements approach, we likewise find that sexual assault in the third degree is not a lesser-included offense of sexual assault in the first degree. Under *Williams*, for an offense to be a lesser-included offense, it must be impossible to commit the greater offense without also committing the lesser offense. In examining the elements of each crime, it is possible to have sexual penetration as defined without having sexual contact as defined. Whereas the latter requires

that the sexual contact be "for the purpose of sexual arousal or gratification," the former does not require the same. Because the crime of first degree sexual assault can be committed without at the same time committing third degree sexual assault, the latter is not a lesser-included offense.

We recognize that this result may seem peculiar. In *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), *overruled by State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990), *overruled by Williams, supra*, the court held that attempted sexual assault in the second degree was a lesser-included offense of attempted first degree sexual assault. In so holding, the court noted: "In view of the definitions or characterizations in § 28-318 pertaining to sexual assault, there may be sexual contact without sexual penetration, but, ordinarily, sexual penetration does not exist without some form of sexual contact." *Id.* at 855, 408 N.W.2d at 729. However, *ordinarily* is not the test under *Williams*. Rather, to be a lesser-included offense under *Williams*, the statutory elements of the lesser offense must be such that it is *impossible* to commit the greater offense without at the same time committing the lesser offense. While our conclusion is not consistent with the idea of sexual penetration in its customary sense, it is a result mandated by our reading of *Williams*, which we are compelled to follow.

Our conclusion is also supported by decisions from other states with substantively similar definitions of "sexual contact" and "sexual penetration." See, *State v. Darby*, 556 N.W.2d 311, 318 (S.D. 1996) (in applying *Blockburger* test, court concluded that sexual contact and sexual penetration each required proof of element the other did not where only sexual contact required proof of specific intent to " 'arouse or gratify' "); *People v Norman*, 184 Mich. App. 255, 457 N.W.2d 136 (1990) (second degree criminal sexual conduct is not necessarily lesser-included offense of first degree criminal sexual conduct because proof of sexual purpose is element found only in former); *People v Garrow*, 99 Mich. App. 834, 298 N.W.2d 627 (1980). Cf., *State v. Malouin*, 433 A.2d 176 (R.I. 1981) (second degree sexual assault, which requires proof of sexual contact, is necessarily lesser-included offense of first degree sexual assault, which requires proof of sexual penetration); *State v. Kobow*,

466 N.W.2d 747 (Minn. App. 1991) (second and fourth degree criminal sexual conduct are lesser-included offenses of first degree criminal sexual conduct where difference is merely one of sexual contact versus sexual penetration). But see, also, *People v. Short*, 52 Cal. App. 4th 488, 61 Cal. Rptr. 2d 8 (1997) (acknowledging holding in *Kobow* but finding that under Minnesota statutes, sexual penetration is general intent crime, notwithstanding fact that sexual contact, specific intent crime, has been deemed lesser-included offense of sexual penetration).

Because of our conclusion, it is unnecessary to address the second prong of the *Williams* test. The trial court did not err in refusing to instruct the jury as to attempted second and third degree sexual assault, as these crimes are not lesser-included offenses of attempted sexual assault in the first degree. This assigned error is without merit.

### 6. SENTENCING

In his ninth assigned error, Schmidt alleges that the trial court erred in allowing testimony of uncharged misconduct at the sentencing hearing. Once again, Schmidt fails to cite any authority in support of his argument.

Briefly, one witness testified, over objection, to conversations she had had with Schmidt involving her supplying him with young girls in exchange for drugs. Deputy Wilson Duke of the York County sheriff's office testified, over objection, that an ex-cellmate of Schmidt's had complained that Schmidt was pressuring him for sexual contact. Another jailer testified, over objection, as to similar allegedly improper conduct on the part of Schmidt which she had observed. Schmidt's counsel cross-examined the first two witnesses and waived cross-examination of the third. Following these three witnesses for the State, Schmidt called a witness on his own behalf.

It is well settled that a sentencing court has broad discretion in the source and type of evidence that it may use in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Hoffman*, 246 Neb. 265, 517 N.W.2d 618 (1994). The Nebraska Supreme Court has specifically held that a sentencing court in noncapital cases may con-

sider a defendant's unadjudicated misconduct in determining an appropriate sentence. See, e.g., *State v. Foral*, 236 Neb. 597, 462 N.W.2d 626 (1990); *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986); *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986); *State v. Menard*, 199 Neb. 456, 259 N.W.2d 479 (1977).

■ Schmidt, however, contends that he was denied due process by being denied the right to confront his accusers or be forewarned of their testimony. Schmidt correctly notes that the Nebraska rules of evidence are not applicable to sentencing hearings. See, Neb. Rev. Stat. § 27-1101(4) (Reissue 1995); *State v. Bunner*, 234 Neb. 879, 453 N.W.2d 97 (1990). Schmidt failed to object to the testimony of the State's witnesses on the basis that he lacked notice. Moreover, as far as the due process required in a sentencing hearing, the Supreme Court has recognized that a criminal defendant has the right to inquire as to incorrect information a sentencing court may have. See, *State v. Bunner, supra; State v. Barker*, 231 Neb. 430, 436 N.W.2d 520 (1989). Schmidt does not dispute any of the information supplied to the sentencing court, nor has he indicated any incorrect information which affected his sentences. This assignment of error is without merit.

■ Although Schmidt's tenth assigned error alleges excessive sentences, Schmidt failed to make this argument in his brief. Errors assigned but not argued will not be addressed. *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996).

## VI. CONCLUSION

The trial court did not err in failing to impose sanctions due to prosecutorial misconduct, nor did it err in overruling Schmidt's motion for a mistrial due to the same. Further, because neither second nor third degree sexual assault is a lesser-included offense of first degree sexual assault, the trial court properly refused to instruct the jury as to attempted second and third degree sexual assault as lesser-included offenses of attempted sexual assault in the first degree. Schmidt's convictions and sentences are affirmed.

AFFIRMED.